## UNITED STATES DISTRICT COURT

## DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **CR 17-00016-DLH** |
| **Plaintiff,** | ) | |
| | ) | |
| **- vs -** | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF MOTION TO** |
| **RED FAWN FALLIS,** | ) | **RECUSE** |
| | ) | |
| **Defendant.** | ) | |

## I.  INTRODUCTION.

The Defendant has moved this Court for an Order of Recusal.

The Defendant believes and respectfully submits that a reasonable person would believe, based upon her Affidavit, the language of this Court in the attached Orders filed in *Dakota Access v. Dave Archambault, et al,* Case No.: 1:16-cv-296 (D.N.D.)[1] and the Court's statements during a telephonic Status Conference filed in *Dundon v. Kirchmeier,* 1:16-cv-406 (D.N.D.)[2] together with the entire record on file in this case, *Archambault* and *Dundon,* that U.S. District Court Judge Donald Hovland, has a bias and/or prejudice in favor of the government, and against the Defendant and No Dakota Access Pipeline (DAPL) Water Protectors, of which she proudly considers herself to be and is regarded as one.

---

[1]  8/16/16 Order Granting Plaintiff's Motion for Temporary Restraining Order, attached as Exhibit A;  9/16/16 Order Cancelling Hearing and Dissolving TRO [Doc.No. 45], a copy of which is attached hereto as Exhibit B.

[2]  A copy of the Transcript of 1/26/17 Telephonic Status Conference, attached as Exhibit C.

As reflected in the Transcript of the Status Conference in *Dundon, supra*, a 42 U.S. C. §1983 action seeking an injunction against the use of excessive force by police officers against Water Protectors, this Court stated:

> I'm not sure how we are ever going to be able to pick a jury in North Dakota because **almost everybody has seen not only what went on...in October and the months leading up to** that.  **Everybody in the state has seen videos** and has **personally seen protests** that have gone on **in Bismark, outside the federal courthouse, blocking traffic, closing streets, ignoring requests to retreat, disperse**.  It was almost a daily occurrence in the fall.
>
> And there's been 600, or so arrests to date.  I **know with certainty if** the City of Bismark Police Department **wanted to** exercise their discretion and **arrest everybody that was acting in an unlawful, disorderly manner, they probably could have arrested 600-plus more**. (Emphasis added).

*Dundon,* Ex. C, *Ibid*, p. 6-7 (Judge Daniel Hovland).

The Court further expressed in the excessive force case, regarding the area of Highway 1806 near the Backwater Bridge where the Defendant was arrested:

> [T]hat **bridge was the topic of every news report, for quite some time because of all the problems that were occurring on Highway 1806.**  And Highway was closed for a long time down there and still is closed, I believe.    That subject was discussed by every member of the Congressional delegation, the governor's office **on almost a daily basis, law enforcement officers** that were **speaking to the press...I saw myself** on the TV, **video of so-called leaders** of the different protest camps that were being interviewed by the press on TV that were talking about their displeasure about the bridge and Highway 1806 being closed.  (Emphasis added).

*Ibid*, pp. 10-11 (Judge Hovland).

In response to Plaintiff's assertion that the TRO had a chilling effect on the exercise of Water Protector's First Amendment Rights in *Archambault, supra*, the Court previously wrote in its September 16, 2016 Order Dissolving the Temporary

Restraining Order, wrote:

> **With respect to the assertion the movement has been a peaceful protest, one need only turn on a television set or read any newspaper in North Dakota.**   There the viewer will find countless videos and photographs of '**peaceful' protestors...verbally taunting, harassing, and showing disrespect to** members of the **law enforcement** community.[3]   The State of North Dakota has estimated the cost for law enforcement services to date at $2 million dollars.   The estimated damage to construction equipment and loss of work on the project is far in excess of several million dollars...
>
> **To suggest that all of the protest activities to date have been 'peaceful' and 'lawful' defies common sense and reality.**   Nearly every day, the citizens of North Dakota are inundated with images of '**peaceful' protesters engaging in mindless and senseless criminal mayhelm.**   (Emphasis added)
>
> The Court fully recognizes the **unlawful and violent protestors arrested to date** constitute a very small percentage of the entire entourage...

Order Dissolving TRO, *Dakota Access v. Archambault, supra*, [Docket No. 45], pp. 3-4, attached as Exhibit D.   As also quoted by this Court in its Order Denying Plaintiffs' Motion for Preliminary Injunction, *Dundon v. Kurchmeier, supra*, [Doc.No. 99], pp. 4-5.[4]

---

[3]   The Defendant proffers that according to discovery provided by the United States, at the time several heavily armed officers grabbed the Defendant and threw her to the ground, she was allegedly engaged in chanting or yelling at and getting close to police officers.

[4]   Previously, and also without a hearing, this Court denied the Plaintiffs' request for a temporary restraining order.   Order Denying Plaintiffs Motion for Temporary Restraining Order, *Dundon*, *supra*, [Doc.No.16], attached as Exhibit D. This Court rejected the request within seventy-two hours of filing based on a lack of service on a single defendant in this mult-defendant case, Sheriff Kyle Kirchmeier.   Service was delayed due to a blizzard on November 29, as well as Sheriff Kirchmeier's refusal to make himself available despite multiple attempts to serve him personally at his office on November 30. Motion To Reconsider Order Denying Plaintiffs' Motion for Temporary Restraining Order and to Set a Date for Hearing; Declaration in Support, *Dundon*, *supra*, [Doc.No.17], pp. 2-3, attached as Exhibit E. After Sheriff Kirchmeier was successfully served on the morning of December 1, this Court, without response from the government, denied the Plaintiffs' Motion to Reconsider, stating how courts look down upon such reconsideration motions.   Order Denying Plaintiffs' Motion for Reconsideration, *Dundon*,

The record shows the Court in *Dundon* adopted the government's proffered facts and purported experts opinions on their face, ordered the names of certain police officials to be redacted from publically available pleadings, accepted facts from local media reports as supporting police actions, and without permitting an evidentiary hearing to test the credibility of the government's experts and their opinions, concluded that Plaintiffs would not likely succeed on the merits of showing police forces were systematically using excessive force on Water Protectors. Order Denying...Preliminary Injunction [Doc.No. 99], *supra*. The Court further found that: "On October 27, 2016, law enforcement's efforts to remove the...protestors from private property located north of Backwater Bridge was met with violence. *Ibid,* p. 15. "**Some of the protestors wore...gas masks**...to conceal their identities"[5] as well as police observance of **"a firearm"** during the incident.[6] *Ibid,* p. 16. The Court also found the protestors were engaged in a "riot." *Ibid*, p. 29.

In the instant case, with the recommendation of the Federal Probation Services, the U.S. Magistrate issued an Order Setting Conditions of Release to a half-way

---

*supra* [Doc.No.31 attached as Exhibit F]; Motion To Reconsider Order Denying Plaintiffs' Motion for Temporary Restraining Order and to Set a Date for Hearing, attached as Exhibit G; Declaration in Support, *Dundon*, *supra*, [Doc.No.17], p. 3.

The Defendant respectfully submits the Court acted arbitrarily when it denied a TRO on procedural grounds and then dismissed the Motion to Reconsider without addressing the issues it raised and the substantial evidence proffered in support of injunctive relief. The Court thereby again exhibited what appears, at least, to be a bias in favor of the government and against Water Protectors attempting to exercise First Amendment Rights.

[5] Discovery from the United States indicates a witness who claims the Defendant wore a gas mask at the time of her arrest. Without any basis therefore and the Defendant respectfully submits incorrectly, this Court concluded in *Kirchmeier* that such was for the purpose of hiding her identity.

[6] The Defendant is the one person charged in Count II, or anywhere, with possession/use of a firearm during the alleged civil disorder on October 27, 2016.

house in Fargo, North Dakota, with restrictive travel, curfew, and other conditions on the Defendant to ensure her safety, the safety of the community, and mitigate against her being a flight risk. *Ibid, United States v. Red Fawn Fallis*, 1:16-cr-00016-DLH [Document Number 41]. These conditions were substantially different than those proposed at the December 15, 2016 Detention Hearing by the Defendant and rejected at that time by the Magistrate. *Ibid.* The Magistrate, the day it issued the Order of Release, *sua sponte*, and without a requisite motion from the United States granted a stay of the Order of Release pending appeal "by the parties".[7]   Order dated April 10, 2017, *Ibid* [Doc.No. 42].

The next day, the United States filed a Motion for Revocation of Magistrate Judge's Order Setting Conditions of Release [Doc.No. 43].   The Motion failed to "specifically designate the part [of the Order] which the appeal is taken and the grounds for appeal,"[8] as required by Rule 59, Federal Rules of Criminal Procedure (FRCrP) and Local Rule 59.1(D)(2).   It also failed to show or argue how the new conditions imposed by the Magistrate's Order of Conditions of Release would not reasonably ensure the safety of the community and the Defendant's presence at pre-

---

[7]   Criminal Rule 59.1(D)(2), Local Rules of the District of North Dakota notifies the parties: "The filing of such an appeal does not operate to state the magistrate judge's order. **A party must seek a stay of the magistrate's order pending appeal in the first instance from the magistrate judge** upon due notice to all the parties."   (Emphasis added).

[8]   The central premise seeking reversal was the prior ruling by the Magistrate in December, 2016, that living in Rapid City, South Dakota and being unemployed and with a few failures to appear years earlier, created circumstances for which such conditions could not protect the community or prevent the unemployed Defendant from fleeing. *Ibid*, p. 3-4.   The United States failed to mention to this Court that the Order Setting Conditions of Release [Doc.No. 41] imposed quite different conditions including the Defendant reside at a half-way house in Fargo, ND, restrictions in travel to within the City, must seek employment under supervision, and other conditions.

trial and trial proceedings.   The Motion further proffered new information and circumstances not considered by the Magistrate.  *Ibid*, p. 4.   Finally, the Motion was not accompanied by a "memorandum in support" as required by Local Rule 47.1(A).

Within twenty-four (24) hours (and thus without seeking information as to whether the Defendant intended to respond) and without affording the Defendant any reasonable opportunity up to the fourteen (14) days permitted by Local Rule 47.1 to file a Response to any government motion, the Court reversed the Magistrate's Order of Release.   The Court did so without explanation as to why the new conditions imposed by the Magistrate's Order, or what other conditions (such as GPS monitoring) would not reasonably ensure the safety of the community and Ms. Fallis's presence at court proceedings, and found "from a **preponderance of evidence** presented at the December 15, 2016 Detention Hearing" that the Defendant was a danger to the community and a flight risk.  The Court granted the government's Motion and Ms. Fallis was "ordered detained until trial.  Order (Doc.No. 44), p. 2-3.

The Defendant respectfully submits the Court's comments in related cases and disregard for her Due Process Rights in not allowing an opportunity to be heard, at the least, further constitute evidence appearing to reflect a bias against the defendant, since, at the very least, the Court's comments are objective evidence which would lead a reasonable person to conclude that the Court's impartiality is subject to question.

The Defendant is mindful in her Motion of the Supreme Court's words in *In re Murchison*, 349 U.S. 133 (1955):

> **A fair trial in a fair tribunal is a basic requirement of due process.  Fairness of course requires an absence of actual bias** in the trial of cases.  **But our system has always endeavored to prevent even the probability of unfairness**.  To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.  That interest cannot be defined with precision.  Circumstances and relationships must be considered....**to perform its high function** in the best way **'justice must satisfy the appearance of justice**.'  (Emphasis added).

<u>Ibid</u>, 349 U.S. at 136 [quoting, *Offutt v. United States*, 348 U.S. 11, 14 (1954)].

This Memorandum is submitted in support of Red Fawn Fallis's Motion to Recuse.

## ARGUMENT.

**A.** **28 U.S.C. §455 Requires Recusal When The Record Supports A Finding of An Appearance of Partiality That May Impede Impartiality of Judgment**

A court is required to recuse itself when its "impartiality might reasonably be questioned. 28 U.S.C. §455(a).  Indeed, 28 U.S.C. §455(a) is designed to project that our judicial system strides in practice "to avoid even the appearance of partiality."[9] *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860

---

[9]  In his *sua* sponte recusal, the District Court in *United States v. Quattrone*, 149 F.Supp. 240 (D.D.C. 1957) explained:

> When there is ground for believing that such unconscious feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves...**the guiding consideration is that the administration of justice should reasonably appear to be disinterested** as well as be so in fact.  (Emphasis added).

*Ibid*, 149 F.Supp. at 242.

(1988); see also *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) ("[b]y enacting section 455(a), Congress sought to eradicate not only actual, but also the *appearance* of impropriety in the federal judiciary"). Thus, "if the question of whether §455(a) requires disqualification is a close one, the balance tips in favor of recusal." *In re Boston's Children First*, 244 F.3d 164 (1st Cir. 2001) [quoting, *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995)].

The question of whether a judge's impartiality might reasonably be questioned requires an objective analysis, and since the purpose of §455(a) is "to promote public confidence in the integrity of the judicial process by replacing the subjective 'in his opinion' standard with an objective test." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996) [quoting, *Liljeberg*, *supra,* 486 U.S. at 858, n.7].

"Under §455(a), disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality even though no actual bias or prejudice has been shown." *United States v. Martin*, 757 F.3d 776, 778 (8th Cir. 2014) [quoting, *United States v. Wisecarver*, 644 F.3d 764, 771 (8th Cir. 2011)].[10]

In the instant case, the Defendant, charged with engaging in a civil disorder by her interaction with police and military authorities, is very concerned and respectfully submits that the record shows this Court has

---

[10]   28 U.S.C. §455(b)(1) states the propriety of recusal where the record appears to show the Court to have "a personal bias or prejudice concerning a party."

tragically and incorrectly found a general linking of violence, destruction, threatening behavior, and criminality with Water Protectors, like herself, in general, and particularly finding that those "protestors" who were arrested were acting in an "unlawful and violent" manner and that a "riot" occurred on October 27, 2016, the day of Defendant's arrest.  Similarly, while facing two charges related to an alleged civil disorder, that she was the one protester with a firearm, and any that persons, such as the Defendant, who reportedly wore a gas mask, was doing so to hide her identity, rather than protect themselves from the excessively used chemical sprays and bombs repeatedly being used by police and military authorities against Water Protectors.  Such findings suggest not only prejudgment of material issues involved in this case, but further and respectfully, seem to ignore the substantial video and other evidence of police and military authorities used excessive force and violence on peaceful protestors.

The Defendant therefore respectfully submits, such evidence presents at least the appearance of partiality, especially in this case involving allegations of violence by this Defendant while engaging in a civil disorder.

Consistent with appearance of partiality against this Defendant, and similar denied Due Process in determining issues surrounding Water Protectors related litigation in general, this Court within twenty-four (24) hours after the United States moved reverse the Order on Release of Conditions, without waiting for or providing Red Fawn Fallis with any meaningful opportunity to

respond or be heard, granted the government's motion and ordered the Defendant to remain in pre-trial detention until her trial.  In doing so, it misconstrued the standard to be applied for review of the Magistrate's Order, simply reversing the Magistrate's decision by a finding of the "preponderance of the evidence," rather than applying the "contrary to law, clearly erroneous" standard required by Rule 59, FRCrP and Local Rule 59(D)(2).  The Court's denial of the Defendant's opportunity to respond to the government's motion, in violation of a clearly established procedural rule, where the result is a misconstruing of applicable standards has been held as grounds for recusal. See, e.g, *Sentis Grp., Inc v. Shell Oil Co.,* 559 F.3d 888, 904-905 (8th Cir. 2009). (Finding the District Court's "deny[ing] plaintiff's a meaningful opportunity to respond" to affidavit submitted by defendants as one factor mandating reassignment, even in the absence of any extrajudicial source of bias).

The Defendant respectfully submits the lack of substantive and procedural due process to Red Fawn Fallis by this Court, is consistent with statements, findings and decisions reflecting a seemingly unquestioned acceptance of any factual proffers by the United States or Dakota Access and local media as to purported events related to her conduct on the day of her arrest, related events of the day, and the general use of excessive force by police forces against protesters and the Company's pursuit of injunctive relief against them, while giving no credence to the record of substantial evidence to the contrary.

The Defendant therefore reasonably believes that the factual basis

established by the record in this case, together with the Court's transcribed Hearing statements and statements in two written Orders, create at least the appearance that Judge Hovland's impartiality is reasonably and objectively subject to question and that his sitting any further on the instant case creates at least an appearance of partiality and injustice.  An objective, knowledgeable member of the public would find a reasonable basis for doubting the Court's impartiality based on its comments. *United States v. DeLuna*, 763 F.2d 897, 907 (8th Cir. 1985).

The Defendant respectfully submits that by its comments, the Court appears "to have shed the robe of the judge and to have assumed the mantle of the advocate." *Reserve Mining Co. v. Lord*, 529 F.2d 181, 185 (8th Cir. 1976).

The Defendant respectfully asks this Court to avoid the appearance, at least of partiality in this case.

**B.   *Berger v. United States* And 28 U.S.C. §144 Require A District Judge Recuse Himself From All Further Proceedings When Confronted With A Timely Affidavit Of A Defendant Setting Forth Facts Which Support An Allegation Of A "Bent Of Mind" That May Prevent Or Impede Impartiality of Judgment**

28 U.S.C. §144 provides in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

11

The purpose of the timeliness requirement is "to avoid the risk that a party might hold its application as an option in the event the trial court rules against it." *James C. Robinson Critique Servs., LLC v. Steward (In Re Steward),*, 828 F.3d 672, 682 (8th Cir. 2016).

In the instant case, the filing of this Motion comes prior to the filing and determination by this Court of any substantive Motion.   It is therefore timely.

In *Berger v. United States*, 255 U.S. 22 (1921), the Supreme Court held that recusal is required is where, assuming the truth of the facts alleged, a reasonable person would conclude that a personal, as distinguished from a judicial bias, exists.  *Ibid*, 255 U.S. at 33-34.

Generally, an allegation of bias and prejudice under 28 U.S.C. §144 has been held to require an extrajudicial source for the Court's expressed bias. *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966).   However, cases going back a half century show this is not universally mandated.  See, e.g., *Wolfson v. Palmieri*, 396 F.2d 121, 124-125 (2nd Cir. 1968).

As the Eighth Circuit recognized decades ago in, *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180 (8th Cir. 1984): "A finding of bias, however, is not precluded merely because the judge's remarks were made in a judicial context." *Ibid,* 747 F.2d at 1192 [citing, *Parliament Insurance Co. v. Hanson*, 676 F.2d 1069, 1075 (5th Cir. 1982);  *Whitehurst v. Wright*, 592 F.2d 834, 838 (5th Cir. 1979)];  *Sentis Grp., Inc v. Shell Oil Co.,* 559 F.3d 888, 904-905 (8th Cir.

2009).[11]

In the instant case, the Court has expressed both personal knowledge and formulated negative conclusions and opinions about Water Protectors, based upon its own limited and out of court observations, as well as extrajudicial hearsay through local media reports, as reflected in Orders and transcribed statements, regarding certain legal actions involving Water Protectors and police/military officials and material issues about the events surrounding her October 27, 2016 arrest on now dismissed state charges.

The Supreme Court held that a motion to recuse is appropriate not only where the record reflects a court with a particularized bias against a specific Defendant, but also where it has exhibited prejudice against groups of which the Defendant is a member.   In *Berger v. United States, supra,* a mix of German and non-German defendants filed an Affidavit for recusal alleging a bias against Germans, after the court described Germans as "reeking with disloyalty," amongst other prejudicial statements.   *Ibid*, 255 U.S. at 28-29.   The non-Germans similarly sought recusal contending they too would be prejudiced as a result of being grouped with the German defendants.   *Ibid*, 255 U.S. at 29-30. Under these circumstances, the Supreme Court held that the affidavits were sufficient to warrant disqualification of the trial judge.   *Ibid*, 255 U.S. at 35-36. See, also, *Wersal v. Sexton*, 674 F.3d 1010, 1020 (8th Cir. 2012) ("a judge who

---

[11]   "[R]eassignment may be necessary based solely on events transpiring in current court proceedings or on a court's statements or rulings where "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Ibid,* [quoting, *Liteky v United States*, 510 U.S. 540, 554 (1994).

harbors bias against a particular group, but shows no outward manifestations of bias lacks impartiality").[12]

As detailed and cited above, in related litigation by DAPL to thwart resistence to pipeline construction, the Court has, with seemingly blanket acceptance of government and corporate proffers and representations, characterized the construction as lawful, despite the absence of the Corps of Engineers' easement under Lake Oahe, as required prior to construction anywhere in North Dakota by the ND PSC permit.   During such litigation The Court has referred to arrested Water Protectors, such as this Defendant charged with crimes of violence, with being "unlawful and violent," characterized the conduct of Water Protectors the day of her arrest as constituting a "riot" with this Defendant facing a charge of participating in a civil disorder, that a single Water Protector possessed a firearm with the Defendant is charged with possessing and discharging a firearm, that some Water Protectors were seen wearing a gas mask and which the Court concluded was to hide their identity, rather than, say, as protection against extensive police use of chemical weapons, and that generally, it was Water Protectors and not police and military forces who used extreme violence amounting to unreasonable, unnecessary, and

---

[12]    Similarly, and by way of example, the 10th Circuit recognized decades ago in *Bell v. Chandler,* 569 F.2d 556 (10th Cir. 1978), that no direct relationship between the judge and the party or the case was required under §144,  in order to have a showing of bias. *Ibid,* 569 F.2d at 559 [citing, *In Occidental Petroleum Corp. v. Chandler*, 303 F.2d 55 (10th Cir. 1962)].   In *Occidental*, Judge Chandler was disqualified where the record showed "a personal enmity, hostility, bias, and prejudice against Occidental and cannot therefore fairly and impartially hear and determine any matter involving Occidental."    *Ibid*, p. 57.

excessive force during the resistance to the DAPL construction.

The Court then, in the instant case, failed to afford the Defendant constitutional and statutory due process by almost immediately reversing the Magistrate's Order Setting Conditions of Release upon a government Motion for Appeal of the Order, without giving Red Fawn Fallis an opportunity to respond within 14 days, as required by Local Rule 47(A).   In doing so, the District Court's Order also failed to require the United States to file a supporting Memorandum of Law, as required by Local Rule 47(a) and reflected a one-sided view of contested facts in favor of the United States, consistent with the record appearing to show a pattern of bias in favor of the United States in Water Protector litigation, and failed to follow the Rule 59, FRCrP and Local Rule 59.1(D)(2) in utilizing the "preponderance of the evidence" standard rather than the required finding(s) and determination(s) the Magistrates Order releasing the Defendant was "clearly erroneous or contrary to law."  See, *Sentis Grp., Inc v. Shell Oil Co., supra,* 559 F.3d at 904-905.

The Defendant respectfully contends in her Affidavit and the record in this case, together with supporting Orders and a Hearing transcript in related cases, the Court's own expressed words and one-sided opinions about Water Protectors and arrestees such as herself, despite clear evidence to the contrary, reflect prejudicial conclusions about "protesters" and their actions generally, as well as the facts of the events of the day of her arrest.   Accordingly, the Defendant has respectfully and sufficiently presented a record indicating

personal bias or prejudice, for which the judge shall disqualify and recuse himself. *United States v. Jones,* 801 F.2d 304, 312 (8th Cir. 1986); *Nations v. United States*, 14 F.2d 507 (8th Cir.1926).

### III.  CONCLUSION.

As the Court of Appeals expressed in United States v. Sears, Roebuck & Co., 785 F.2d 777 (9th Cir. 1986):

> [O]n rare occasions, both for the judge's sake and the appearance of justice, an assignment to a different judge is desirable.

Ibid, 785 F.2d at 780.

Under the circumstances existing here, the Defendant respectfully submits that the Court appears to have a bias or prejudice against the Defendant. Fundamental fairness, as well as the preservation of the appearance and reality of impartiality require that the District Court recuse itself from any further proceedings in this case.

Dated this *20th* day of April, 2017.

Respectfully submitted,

*/s/ Bruce Ellison*
BRUCE ELLISON
P.O. Box 2508
Rapid City, S.D.  57709
(605) 348-1117
belli4law@aol.com

Attorney for Red Fawn Fallis